IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONA FIORENTINI                :       CIVIL ACTION
                                       :
      v.                          :
                                         :
WILLIAM PENN SCHOOL DISTRICT     :     No. 13-3689

**<u>MEMORANDUM AND ORDER</u>**

Ditter, J.                                               February 9, 2016

        This is an employment discrimination case brought by Mona Fiorentini against the

William Penn School District ("District").  Fiorentini alleges that she was subjected to

age and disability discrimination that led to the termination of her employment and that

the District interfered with her right to medical leave.  Fiorentini brings claims of

discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

U.S.C. §§ 621, *et seq*.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

§§ 12101, *et seq*.; the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*.;

and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S.§§ 955(a) and (e).

Presently before me is the District's motion for summary judgment which I will grant.

## I.  FACTUAL BACKGROUND[1]

        In 2001, Fiorentini was hired by the District as a Literacy Coach and Certified

Reading Specialist at Park Lane Elementary School to work with children in kindergarten

through sixth grade.  Am. Compl. at 4, Pl.'s Dep. at 46, ln. 1-13; 223, ln. 11-24.

---

[1] Where facts are agreed, I have not cited the record.

Fiorentini was certified as a Reading Specialist, but did not possess a Pennsylvania Elementary Teaching Certificate.  Pl.'s Dep. at 41, ln. 1-5.  Dujuana Ambrose was the principal of Park Lane Elementary School from 2006-2010 and Fiorentini's supervisor for the relevant time period.  Pl.'s Dep. at 55, ln. 15.

On September 14, 2009, Fiorentini informed Principal Ambrose that she had to arrange for a biopsy to test for breast cancer.  Pl.'s Dep. at 63, ln. 19-25, 66.  Fiorentini alleges that from that point on, she was treated as a "leper."  Pl.'s Dep. at 67, ln. 5-8.  She alleges that, *inter alia*, she was "segregated" in her employment, was no longer invited to participate in meetings, excluded from communications, kept off planning committees and denied an opportunity to attend a professional development conference.  Am. Compl. at 5-6.  Prior to that time, Fiorentini did not have any problems with Principal Ambrose or the District.[2]  Pl.'s Dep. at 50, ln. 1-4; 51, ln. 6-15.

Three (3) days after Fiorentini told Principal Ambrose that she had been diagnosed with breast cancer, Ambrose verbally "demoted" her from a full-time literacy coach to a combination literacy coach/reading specialist.  Pl.'s Dep. at 78, 79, ln. 10-20.  In doing so, Fiorentini was assigned to working only with third through sixth grade students rather than all students in first through sixth grades.  Pl.'s Dep. at 223.  Fiorentini felt that this was a "demotion" because the position of reading specialist required less qualifications

---

[2]  Both parties agree that prior to September 2009, Principal Ambrose never treated Fiorentini in an unfair manner and that Fiorentini received satisfactory reviews.  Pl.'s Dep. at 51, ln. 2-23; 56, ln. 1-5.  Moreover, Fiorentini was unaware of Principal Ambrose discriminating against any other person in the District.  Pl.'s Dep. at 54, ln. 14-25; 55, ln. 1-10.

and because she had fewer students for instruction.  Pl.'s Dep. at 78, ln. 15-22; 85, ln. 7-20.  Fiorentini's job title was not changed on her personnel record, nor was her salary impacted.  Pl.'s Dep. at 80-81, 94.  Principal Ambrose testified that the reassignment of work was done in preparation for the "PSSA," standardized tests which were scheduled to take place for the third through sixth grades.  Ambrose Dep. at 106-110.  Principal Ambrose assigned another employee, Rosemary Mannis, a fellow teacher approximately ten (10) years younger, to work with the non-testing grades, kindergarten through second grade.  Pl.'s Dep. at 223.  Fiorentini states that when she asked Principal Ambrose why her job duties had changed, she was told that it was due to Fiorentini's health.  Pl.'s Dep. at 96.  During that time, Principal Ambrose testified that she had the authority to change the duties of an individual's position, but not the job title.  Ambrose Dep. at 12, ln. 16-25; 13, ln. 1-12; 42, ln. 14.

Fiorentini's treatment for her breast cancer required surgery and subsequent home healthcare.  On February 22, 2010, the District approved Fiorentini's request for a Family and Medical Leave of Absence, effective March 22, 2010, through April 21, 2010, and an unpaid Family and Medical Leave of Absence effective April 21, 2010, through May 17, 2010.  On April 26, 2010, the District approved Fiorentini's request for an unpaid medical leave of absence effective May 18, 2010, through June 18, 2010.  The District permitted the teacher's union to seek sick bank days from other teachers to donate to Fiorentini to use when she went on unpaid leave.  Effective May 1, 2010, through April 30, 2011, the

District approved Fiorentini's request to go on medical sabbatical.

Denise Van Roy is the president of the Teachers Association ("Union") of which Fiorentini was a member. Van Roy has held that position for twenty-one (21) years. Her job is to represent the interests of the teachers. In the spring of 2009, Van Roy testified that she had discussed the possibility with Fiorentini that reorganization could cause her to lose her job because she was only certified as a Reading Specialist and lacked classroom experience. Van Roy Dep. at 45-46, at 82-83; Def.'s Ex. 15, Dec. 9, 2010 email. Moreover, the union held meetings with its members regarding the possibility of layoffs and furloughs in the district due to funding issues. Van Roy Dep. at 39-40. Fiorentini acknowledges that she was aware that her position "could" have been eliminated due to reorganization before it happened. Pl.'s Dep. at 130.

In June 2010, all reading specialists and literacy coach employment positions were scheduled for elimination. Pehlman Dep. at 48-49; Van Roy Dep. at 35-36. Denise Van Roy and Betty Pehlman worked to place employees who were effected by funding cuts in the District. Pl.'s Dep. at 132. A position for an Instructional Specialist K-6 was created for existing employees.[3] Def's Ex. 8. The Instructional Specialist K-6 job posting was issued on May 4, 2010, and had an application deadline of May 11, 2010. Def.'s Ex. 8; Pl.'s Dep. at 130, ln. 21. Fiorentini never applied for, nor was she considered, for that

---

[3] The job posting stated: "[t]he applicant for this position at the elementary level must hold an active K-6, K-8 or reading specialist certificate and have had classroom teaching experience." Def.'s Ex. 16.

4

position.  Pl.'s Dep. at 130-131; Pehlman Dep. at 70, ln. 12-15.  Fiorentini testified that she did not apply because she was told by Betty Pehlman and Denise Van Roy that she was not qualified for the job.[4]  Pl.'s Dep. at 131.  The District ultimately hired eight (8) individuals for the Instructional Specialist positions, all of whom had Pennsylvania Elementary Teaching Certificates.[5]  Def.'s Ex. 16, Ex. 26.  Successful candidates ranged in age from 38 to 66 years' old.  Def.'s Ex. 26.

On November 9, 2010, while on "medical sabbatical" leave, Fiorentini received a letter stating that her employment was being suspended when she returned from leave on April 30, 2011.  Def.'s Ex. 9; Pl.'s Dep. at 148.  The letter stated that Fiorentini did not qualify for an "instructional coach position" due to the fact that "there are no positions in the district that require only a reading certification" and because she did not have "the classroom teaching experience required."  Def.'s Ex. 9.  On November 22, 2010, Fiorentini submitted a note that she had worked for the Archdiocese of Philadelphia for a year.  Def.'s Ex. 27.  Ms. Pehlman informed Fiorentini that her work experience in the Archdiocese did not count because it was not done under a Pennsylvania Elementary

---

[4]  It is reasonable to assume that Fiorentini was advised of the job posting in light of the fact that she testified that she did not apply because she was told that she was not qualified for the position.  Pl.'s Dep. at 130-131.

[5]  An email to Betty Pehlman dated May 27, 2010, provided a list of former math coaches, literacy coaches and reading specialists who were eligible to apply for the Instructional Specialist job.  The email specified that 10 candidates were recommended for Elementary Instructional Specialist positions; 7 candidates applied for the positions and were not selected; and 4 individuals did not apply for the position, including Fiorentini.  Def.'s Ex. 32.

Teaching Certificate.  Pl.'s Dep. at 153.  Fiorentini argues that the requirement of

"classroom experience" fell within the District's discretion and notes that the job posting

for Instructional Specialist failed to include the specific requirement that classroom

experience be conducted under a Pennsylvania Elementary Teaching Certificate.  *See*

Pehlman Dep. at 83-84.

On February 23, 2011, in response to a grievance filed by Fiorentini, the District

decided not to take action to furlough her and concluded that it would "assess the

situation again when [Fiorentini] is released to return from her medical leave."  Def.'s Ex.

22.

Fiorentini returned to work in May 2011, through June 2011, assisting an

instructional specialist at a different school.  Pl.'s Dep. at 166-168.  At the end of the

2010-2011 year, the District sought another reorganization of its programs, eliminated the

position of Instructional Specialist and created a School Site Facilitator position for the

2011-2012 year.  Def.'s Ex. 20, Ex. 30.  The School Site Facilitator position required a

Pennsylvania Elementary Teaching Certificate and a "[m]inimum of three years of

successful Classroom Teaching Experience in Pennsylvania public schools preferably at

William Penn."  Def.'s Ex. 30.  There were 24 applicants for the job, 16 interviews were

granted and 8 individuals were hired as School Site Facilitators.[6]  Def.'s Ex. 26.

Successful candidates ranged in age from 38 to 66 years' old.  *Id.*

---

[6] According to the District, Fiorentini was not granted an interview because she did not
have a Pennsylvania Elementary Teaching Certificate.  *See* Def.'s Ex. 26.

6

On August 9, 2011, Fiorentini received an email confirming that she was being furloughed as her certification as a reading specialist did not meet any of the positions in the district at that time.  She was fifty-seven years old.

## II.  STANDARD OF REVIEW

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party.  If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.  The opinion of an expert does not create a fact - it can only become a fact if the finder of fact gives it credence.  In deciding whether to accept an opinion, the finder of fact may consider the expert's background, for example, his education, experience, etc., and reasons given in support of the opinion.  Here, Fiorentini must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electrical Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  She "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations."  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992); *see also Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

## III.  DISCUSSION

Fiorentini brings claims of discrimination under the Age Discrimination in Employment Act ("ADEA"); the Family and Medical Leave Act ("FMLA"); the Americans with Disabilities Act of 1990 ("ADA"); and the Pennsylvania Human Relations Act ("PHRA").  I will address each claim individually.

**Count I: AGE DISCRIMINATION CLAIMS UNDER THE ADEA AND PHRA**

### A.  A *Prima Facie* Case of Discrimination

Fiorentini brings age discrimination claims under the ADEA and PHRA both of which prohibit an employer from discriminating against an individual based on her age.[7] 29 U.S.C. § 623.  To prevail in an employment discrimination case under each of these statutes, Fiorentini must first come forward with enough evidence to establish a *prima facie* case of discrimination against the District.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (finding it is appropriate to analyze age discrimination claims pursuant to *McDonnell Douglas*).  To establish a *prima facie* case of age discrimination, Fiorentini must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated individuals not of the protected class received more favorable treatment or the

---

[7]  Because the same legal standard applies to both the ADEA and the PHRA, I review them collectively.  *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004).

circumstances of the adverse employment action otherwise give rise to an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. Fiorentini is only required to produce evidence sufficient to create an inference that an employment decision was based upon an illegal discriminatory criterion. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356-57 (3d Cir. 1999). The burden then shifts to the District to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, Fiorentini must show by a preponderance of the evidence that the legitimate reasons proffered by the District were a pretext for discrimination. *Id.* at 804.

Fiorentini has established the first element of her *prima facie* case because she was over the age of forty when the alleged discrimination occurred. I need not make a determination as to whether Fiorentini was qualified at this stage in order to satisfy the second element of the *prima facie* case because, as discussed below, I conclude that Fiorentini's claim fails at the third step. In order to establish the third element of her *prima facie* case, Fiorentini argues that both her reassignment in early 2010 and her 2011 furlough are adverse employment actions. The District argues that only the 2011 furlough can be construed as an adverse employment action. I will review each separately.

### 1. Reassignment

In December 2009 or January 2010, Fiorentini was reassigned to work with third through sixth graders rather than kindergarten through sixth grade as a literary

coach/reading specialist.  A teacher approximately ten (10) years younger was assigned to work with the kindergarten through second grade children.  Principal Ambrose testified that the reassignment of work was done in preparation for impending standardized tests for the third through sixth graders.  Fiorentini contends that this reassignment was a demotion and thus, an adverse employment action based on her age.

"An 'adverse employment action' is one that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *see Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2nd Cir. 2000) (concluding that delay in teacher's reassignment, transfer to purportedly inferior facilities, and change in responsibilities from teaching special education students to teaching mainstream students, did not constitute an adverse employment action).  Fiorentini has failed to create a genuine issue of material fact as to whether her alleged "demotion" was an adverse employment action.  Here, there is no significant evidence of a "demotion."  Fiorentini's salary, reporting requirements and general duties remained the same.  Pl.'s Dep. at 81, ln. 8-9.  Although she was responsible for fewer students, Fiorentini was tasked with preparing those children for testing.  When considering the importance to the District that its students do well on standardized tests, Fiorentini's duty to prepare them to do so may have been seen by the District as more challenging in the short run than the day to day teaching of younger students.  Indeed, the only significant disadvantage Fiorentini can point to is her

fear that a reduction in the number of grades she was responsible for made her appear less accomplished and that she may be perceived as performing less prestigious tasks.  Pl.'s Dep. at 82-83.  Such a concern is not significant enough to establish a materially adverse change in her employment.

In support of her argument that her reassignment was a "demotion," Fiorentini relies on the expert testimony of Edward F. Dragan, EdD, who opined that the "change to plaintiff's job title and reduction of the instructional duties and responsibilities . . . imply and can be interpreted as a demotion."  Expert Witness Aff. at 3.  This opinion is no opinion at best.  Dr. Dragan does not say he interpreted the revision of her duties as a demotion or just who in this vast world of ours might do so.  Indeed, Fiorentini's expert's opinion cannot create a material issue of fact simply by stating that the factual circumstances "can be interpreted as a demotion."  Dr. Dragan also fails to mention discrimination, age or disability in his affidavit.  Despite providing broad statements that the District's actions "showed signs of possible attempts to purposefully exclude her from employment,"[8] Dr. Dragan does not provide any insight or explanation as to why the District would attempt to do so.  Expert Witness Aff. at 3.

It is within my purview to reach the legal conclusion as to whether the circumstances surrounding Fiorentini's 2009/2010 assignment of duties was an actual "demotion" and adverse employment action.  *Highway Material, Inc. v. Whitemarsh Tp.,*

---

[8]  Maybe beats vague.

*Montgomery County, Pa.*, 2004 WL 2220974, at \*19 (E.D. Pa. Oct. 4, 2004).  I conclude that Dr. Dragan's opinion has little value and does not raise a material issue as to whether Fiorentini's reassignment of duties was an adverse employment action.  The District denies the reassignment of duties was a demotion and it is clear Fiorentini did not suffer the usual consequences of a demotion such as reduction in pay or seniority.  Consequently, I find that Fiorentini's reassignment of duties was not a demotion and therefore, cannot be used to establish the adverse employment action prong of *McDonnell Douglas*.

### 2.    Furlough

I now turn to an analysis of Fiorentini's furlough as it relates to her *prima facie* case for age discrimination.  The District concedes that Fiorentini suffered an adverse employment action when she was furloughed in 2011.  However, Fiorentini cannot establish the fourth element of a *prima facie* case because she is unable to point to younger, similarly situated individuals who received more favorable treatment or that the circumstances of her furlough otherwise gives rise to an inference of unlawful discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  In determining "similarly situated" employees, I must "undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner."  *Monaco v. American General Assur. Co*, 359 F.3d 296, 305 (3d Cir. 2004).

Here, although Fiorentini was the only Literacy Coach/Reading Specialist who was

furloughed, she was also the only Literacy Coach/Reading Specialist who possessed only a reading certificate and had no teaching experience under with Pennsylvania teaching certification.  All of the instructors hired for the Instructional Specialist Position and the Site Facilitator positions had Pennsylvania elementary teaching certifications.[9]  *See* Def.'s Ex. 16.  As a result, I find that those who were ultimately hired for Instructional Specialist and the Site Facilitator positions are not considered "similarly situated."[10]  Moreover, even it Fiorentini was "similarly situated," she had not shown others were treated more favorably.  In fact, two individuals selected for the Instructional Specialist and Site Facilitator positions were older than Fiorentini and only one individual selected was younger than 40 years.  *See* Def.'s Ex. 26, Joe Conley Aff.

## B.    Legitimate/Nondiscriminatory Reason - Rationale for Furlough

Even if Fiorentini could establish a *prima facie* case, any reasonable fact finder would have to conclude that she has failed to carry her burden at the next step of the *McDonnell Douglas* analysis.  Once a plaintiff has established her *prima facie* case, the burden shifts to the District to offer a legitimate, non-discriminatory reason for its actions. *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006).  This burden is

---

[9]  As previously noted, Fiorentini never applied for the position for Instructional Specialist.

[10]  Fiorentini points to June Tolomeo as an employee who was similarly situated, yet treated differently, because Ms. Tolomeo was ultimately hired as a Site Facilitator despite a question of fact regarding Tolomeo's level of classroom experience.  I find Ms. Tolomeo was not "similarly situated" because, unlike Fiorentini, she possessed a Pennsylvania Elementary Teaching certificate.

"relatively light," fulfilled by the employer "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.*"  Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). As set forth above, the District's decision to furlough Fiorentini was based on her lack of the proper Pennsylvania teaching certification and Pennsylvania public classroom teaching experience.  This is clearly a legitimate, non-discriminatory reason for her furlough so the burden shifts back to Fiorentini to show it is a pretext for discriminatory action.

### C.   Evidence of Pretext

To avoid summary judgment Fiorentini must offer evidence rebutting the District's proffered legitimate reasons.  The evidence "must allow a fact finder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (internal citations, emphasis and footnotes omitted).  In other words, Fiorentini must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the defendants' proffered legitimate reasons for her termination that a reasonable fact finder could rationally find them 'unworthy of credence' and, hence, infer that the defendants did not act for asserted non-discriminatory reasons." *Gosnell v. Runyun*, 926 F.Supp. 493, 497 (M.D. Pa. 1995) (citing *Fuentes*, 32 F.3d at 765).

Fiorentini has not done this by any evidence before me.  As previously noted,

Fiorentini was advised by her union representative that her lack of a teacher certification could effect her position in the event of an anticipated reorganization.  Moreover, the District has presented evidence that Fiorentini did not have the proper qualifications for any positions established after restructuring of the District.  In addition, the candidates selected for those positions all had Pennsylvania elementary teaching certification.[11]

Finally, Fiorentini has failed to offer evidence that this restructuring had an adverse impact on older teachers.  The ultimate test in employment discrimination cases is whether discriminatory animus was a motivating factor in causing the adverse employment action.  *Costa v. Desert Palace*, 539 U.S. 90, 95 (2003).  Fiorentini has not offered any evidence from which it could be found that age discrimination was the motiving factor in her furlough.  *See Ezold v. Wolf Block*, 983 F.2d 509, 527 (3d Cir. 1992) (without some evidence to cast doubt on the employer's stated reason, the court will not interfere in an otherwise valid management decision).  Fiorentini does not offer any direct evidence of discrimination to satisfy the *McDonnell Douglas* test, i.e., no derogatory comments made to her concerning her age.  Nor is there any circumstantial evidence that supports her claims as teachers older than Fiorentini with Pennsylvania teaching certificates were not selected for furlough.  There is no evidence that a younger teacher with the same certification and experience was saved from furlough.

When viewing the evidence in its entirety, I conclude that a reasonable fact finder

---

[11]  Fiorentini does not argue that the certification requirement was in and of itself discriminatory.

could not rationally find the District's reasons for her furlough unworthy of credence, and

thus, conclude that the District did not act for the asserted non-discriminatory reasons.

As the Third Circuit has stated:

> A decision affecting an employee in the protected class does not become a
> discriminatory decision merely because made in the context of a
> reorganization, or because a younger employee is benefitted by the decision.
> Rather, the inquiry is whether the decision was motivated by the affected
> employee's age.  If the employer's decision was based on legitimate
> business concerns, i.e., choosing the person the employer believes is the
> best person for a job, the employee's disagreement with this decision does
> not prove pretext.

*Billet v. CIGNA Corp.*, 940 F.2d 812, 827 (3d Cir. 1991) (citation omitted) *overruled in*

*part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  Fiorentini

has failed to present any evidence that her furlough was motivated by her age; therefore, I

will grant the District's motion for summary judgment for her age discrimination claims.[12]

## Count II:  FAMILY AND MEDICAL LEAVE ACT ("FMLA")

The FMLA entitles "employees to take reasonable leave for medical reasons."[13]

29 U.S.C. § 2601(b)(2).  "The FMLA is meant to prohibit employers from retaliating

against employees who exercise their rights, refusing to authorize leave, manipulating

positions to avoid application of the Act, or discriminatorily applying policies to

---

[12]  Even if Fiorentini had made out a *prima facie* case of employment discrimination with
regard to her "demotion," I would conclude for the reasons stated, *supra,* that Fiorentini has
failed to demonstrate that the District's articulated reasons for her reassignment were pretextual.

[13]  "Eligible employees 'shall be entitled to a total of twelve workweeks of leave during
any twelve-month period' if the employee has a 'serious health condition that makes the
employee unable to perform the functions of the position of such employee.'"  *Callison v. City of
Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. § 2612(a)(1)(D)).

discourage employees from taking leave." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005) (citing 29 C.F.R. § 825.220).  When an employee returns from FMLA leave, the employer must restore the employee to the same or equivalent position she held, with equivalent benefits and with conditions of employment comparable to those she had when she left.  *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)).

The FMLA contains two relatively distinct types of provisions prohibiting employers from: (1) interfering with an employee's exercise of this right; and (2) discriminating or retaliating against an employee who exercises this right.  29 U.S.C. § 2615(a); *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  Fiorentini alleges violation of both the interference and retaliation provisions of the FMLA.

## A. Interference

The first aspect of Fiorentini's claim centers on the "interference" provision of the FMLA.  To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross*, 755 F.3d at 191-92 (citations omitted).  There is no dispute that Fiorentini satisfied the first four prongs of an interference claim, namely that she was an eligible employee entitled to FMLA leave who gave proper notice of her intent to invoke that leave.  The only question then is if the District denied Fiorentini benefits under the FMLA.

17

Fiorentini argues that Principal Ambrose reassigned her to different tasks once it was clear she would be taking FMLA leave thereby "demoting" her and interfering with the exercise of her right to take FMLA leave.[14]  However, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  *Callison*, 430 F.3d at 120.  Because such a claim is not based on discrimination, the "*McDonnell Douglas* burden-shifting analysis is not required."  *Ross*, 755 F.3d at 192 (citing *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006).  In order "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld."  *Ross*, 755 F.3d at 192.

Here, the District did not engage in any activities which interfered with or withheld Fiorentini's FMLA benefits.  In fact, the District provided Fiorentini with the all of the entitlements of the FMLA.[15]  Because Fiorentini has failed to show any prejudice and has failed to make a *prima facie* showing of interference, I will grant the District's motion for summary judgment on her FMLA interference claim.[16]  *Ross*, 755 F.3d at 192.

---

[14]  The spectre of "demotion," like Marley's ghost, keeps re-appearing.

[15]  Fiorentini fully exhausted her FMLA time, was granted additional unpaid medical leave, provided with donated leave from her co-workers, and then was granted medical sabbatical leave.  *See* Pl.'s Dep. at 116-120.

[16]  To the extent that Fiorentini argues that her termination after she took her FMLA leave amounted to a denial of FMLA benefits, her argument is misplaced in the "interference" context.  As previously noted, for an interference claim to be viable, the plaintiff must show that FMLA benefits were withheld.  *Ross*, 755 F.3d at 192.  Fiorentini's FMLA benefits were not withheld; therefore, her "proximity" of termination arguments are unavailing.

### B. Retaliation

Fiorentini also argues that the District retaliated against her by "demoting" her in the Fall of 2009, after she advised Principal Ambrose that she had cancer.[17]  To prove an FMLA retaliation claim, Fiorentini must show that: (1) she invoked her right to FMLA benefits; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the invocation of her rights.  *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009) (modifying *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)).  Retaliation claims based on circumstantial evidence are guided by the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Lichenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294, 302 (3d Cir. 2012).

There is no dispute that Fiorentini properly invoked her rights under the FMLA thereby establishing the first element of her *prima facie* case.  In order to demonstrate the second prong, Fiorentini must establish that she suffered an adverse employment decision.  Fiorentini argues that she suffered an adverse employment decision when she was "demoted" by Principal Ambrose once she indicated that she had cancer "thereby

---

[17]  The parties disagree as to the adverse employment decision at issue here.  In its motion for summary judgment, the District focused on Fiorentini's furlough in 2011 as a retaliatory action.  In her response, Fiorentini focused on her alleged "demotion" in the Fall of 2009 as the retaliatory action at issue.  Because Fiorentini does not respond to the District's discussion of her furlough as an adverse employment decision made in retaliation for her FMLA leave, any argument in support thereof is waived.  *See Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003).  As a result, although I have already determined that Fiorentini's reassignment of duties, or "demotion," was not an adverse employment decision, I will focus solely on the "demotion" as the adverse employment action at issue in the interest of a complete analysis.

triggering an expectation that [Fiorentini] would be taking some type of leave." *See* Pl.'s Br. at 22.

Fiorentini's alleged "demotion" took place in the Fall of 2009 after Fiorentini advised Principal Ambrose that she had cancer, but before Fiorentini formally invoked and took FMLA leave. Even if I were to find that Fiorentini's notice to Principal Ambrose that she had cancer was sufficient to invoke her FMLA rights, she is unable to establish that the action taken by Principal Ambrose was adverse, for the reasons discussed above. Because Fiorentini has failed to establish that she suffered an adverse employment action due to the invocation of her FMLA rights, I will grant the District's motion for summary judgment for this portion of her FMLA claim.

## Count III: DISABILITY DISCRIMINATION CLAIMS UNDER THE ADA AND PHRA

Fiorentini argues that the District discriminated against her due to her cancer diagnosis in violation of the ADA and the PHRA.[3] A plaintiff presents a *prima facie* case of discrimination under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs, Inc.,* 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F3d

---

[3] Because the PHRA and the ADA are "basically the same," Pennsylvania courts generally interpret the PHRA in accord with its federal counterpart. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (citations omitted).

827, 831 (3d Cir. 1996)).

The District concedes that Fiorentini was "disabled" within the meaning of the ADA. Next, it must be determined whether Fiorentini was "otherwise qualified" for employment in the District. *Shiring*, 90 F.3d at 832. This burden fall on the employee. *Shiring*, 90 F.3d at 832.

> A two-part test is used to determine whether someone is a qualified individual with a disability. First a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.

*Gaul*, 134 F.3d at 580 (internal quotations and citations omitted).

For the reasons previously discussed, Fiorentini was not qualified for further employment in the District at the time of her furlough because she lacked a Pennsylvania elementary teaching certificate.[4] Thus, Fiorentini is not a "qualified individual" under the ADA and cannot establish a *prima facie* case of discrimination.

Moreover, Fiorentini cannot establish the third element of her *prima facie* case because she has not presented any evidence that her medical condition was a "determinative factor" in her furlough.[5] *Watson v. Southeastern Pennsylvania Transp.*

---

[4] Although Fiorentini once again argues in this context that her reassignment of duties by Principal Ambrose was an "adverse employment action," this argument is dismissed for the reasons discussed *supra*.

[5] Fiorentini points to comments regarding her health made by Principal Ambrose; however, I find these comments irrelevant as Fiorentini had not argued that Principal Ambrose

*Authority*, 207 F.3d 207, 215 (3d Cir. 2000).  As previously discussed, Fiorentini was

advised by her union representative 4-5 months prior to her cancer diagnosis that the fact

that she held only had a Reading Specialist certificate could effect her position in the

event of an anticipated reorganization. Because the decision to furlough Fiorentini was

based on the lack of necessary teaching qualifications, summary judgment will be granted

to the District as to Fiorentini's ADA claim.

## V.  CONCLUSION

Having found that no reasonable finder of fact could conclude that Fiorentini's

termination was based on any discriminatory animus, I must grant the defendant's motion

for summary judgment on all counts.  An appropriate order follows.

---

had any role in the decision to furlough Fiorentini.